Bradley T. Hunsicker
(Wyoming State Bar No. 7-4579)
WINSHIP & WINSHIP, P.C.
100 North Center Street, Sixth Floor
PO Box 548
Casper, WY 82602
(307) 234-8991

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| In re: ) | |
| ) | |
| RED EAGLE OIL, INC. ) | Case No. 11-20857 |
| ) | CHAPTER 11 |
| Debtor. ) | |
| ) | |

### DEBTOR'S MOTION TO EXTEND AUTOMATIC STAY OR GRANT PRELIMINARY INJUNCTION

**COMES NOW** Red Eagle Oil, Inc., a Wyoming Corporation ("REO") as Debtor-in-Possession, by and through its counsel, and for its *Motion to Extend Automatic Stay or Grant Preliminary Injunction*, states and alleges as follows:

1. On August 1, 2011 (the "Petition Date"), REO commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Wyoming (the "Bankruptcy Court").

2. REO has continued in the possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. The shareholders of REO consist of Dale Hinze (12.5%), Judith Hinze (12.5%) Bryan Hinze (25%), Brad Hinze (25%) and Scott Hinze (25%). With respect to these shareholders, Dale Hinze is the President of REO, Bryan Hinze is the Vice-President of REO,

1

Brad Hinze is the Treasurer of REO, Scott Hinze is the Secretary of REO and Judith Hinze is an Assistant Secretary (collectively "the Officers").

4. All Officers play vital and crucial roles. Dale is responsible for management of the transportation side of the business. He is also the primary operations manager of the bulk plant. These duties require day-to-day involvement in REO, seven (7) days a week. Bryan is responsible for the corporate well-being of REO, which requires direct daily contact with all vendors, managers of REO and dispatchers. These duties require day-to-day involvement, seven (7) days a week. Brad is responsible for managing the retail operations, vendor negotiations and assists Bryan with corporate well-being. These duties require day-to-day involvement, seven (7) days a week. Scott is responsible for all financial reporting and information technology. All incoming and outgoing cash and credit receipts are managed by Scott. These duties and responsibilities require day-to-day involvement, seven (7) days a week. Judith is responsible for human resources and fuel tax administration. These duties must be performed daily, seven (7) days a week. The Officers all communicate with one another on a day-to-day basis to ensure REO is operating as smoothly as possible. This requires the constant attention of the Officers.

5. Prior to the Petition Date, several civil lawsuits were pending against REO in which certain Officers of REO were named as co-defendants due to their capacities as alleged "guarantors" of REO. A list of these actions is attached hereto as "Exhibit A".

6. The Officers play intricate and vital roles in the day-to-day operations and management of REO. Consequently, the Officers are critical to the success of REO, and more important, its reorganization.

7. In having to personally defend these civil lawsuits, the Officers are being forced to not only take valuable time away from the management of REO, but are also being distracted

from assisting in the creation of a comprehensive, confirmable Chapter 11 Plan of Reorganization and Disclosure Statement.

8.      As part of a Chapter 11 plan, it is conceivable that the Officers may have to infuse cash and/or other assets into REO from related entities owned by the Officers.  Allowing the civil lawsuits to move forward against the Officers could seriously impair REO's ability to reorganize and very well likely lead to the Officers being forced to file individual bankruptcies, which would compromise their ability to assist in funding a plan with their personal assets.

9.      Further, the Officers are merely alleged guarantors, and not co-debtors, on the debts alleged due and payable in the civil lawsuits.  Accordingly, until the issue of liability is resolved as to REO, it is not possible to know how much, if anything, is owed by any Officer/guarantor.

10.     Although the automatic stay is normally applicable only to REO, unusual circumstances can empower the Court to extend the stay to non-debtors or co-defendants of REO.  *Variable-Parameter Fixture Development Corporation v. Morpheus Lights, Inc.,* 945 F.Supp. 603, 608 (S.D.N.Y. 1996).  An example of unusual circumstances is "when the debtor and non-debtor are 'so bound by statute or contract that the liability of the non-debtor is imputed to the debtor by operation of law' or when the 'Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code.'"  *Id*. (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986).  As stated by the court in *A.H. Robins Co., Inc*., *v. Piccinin*, the automatic stay is designed "to protect the debtor from an uncontrollable scramble for its assets in a number of uncoordinated proceedings in different courts, to preclude one creditor from pursuing a remedy to the disadvantage of other creditors, and to provide the debtor **and its executives** with a reasonable respite from protracted

3

litigation, during which they may have an opportunity to formulate a plan of reorganization for the debtor." 788 F.2d 994, 998 (4th Cir. 1986). "Specifically, courts . . . have held that while the automatic stay ordinarily applies only to actions against the debtor itself, it is properly extended to actions against non-debtors where an identity of interest exists between the debtor and non-debtor defendant such that the debtor is the real party defendant and the litigation will directly affect the debtor and, more particularly, the debtor's assets or its ability to pursue a successful plan of reorganization under Chapter 11." *In re Continental Airlines*, 177 B.R. 475, 478 (Bankr. D. Del. 1993) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); *In re Litchfield Co. of South Carolina Ltd. Partnership,* 135 B.R. 797 (Bankr. W.D. N.C. 1992); *In re North Star Contracting Corp.,* 125 B.R. 368 (Bankr. S.D. N.Y. 1991); *Maaco Enterprises, Inc. v. Corrao,* 1991 WL 255132, (E.D. Pa. November 25, 1991); *Algemene Bank Nederland, N.V. v. Hallwood Indus., Inc.,* 133 B.R. 176 (Bankr. W.D. Pa. 1991); *In re Lomas Financial Corp.,* 117 B.R. 64 (Bankr. S.D. N.Y. 1990); *In re Zenith Laboratories, Inc.,* 104 B.R. 659, 664–66 (Bankr. D. N.J. 1989); *Sudbury, Inc. v. Escott,* 140 B.R. 461 (Bankr. N.D.Ohio 1992); *In re Circle K Corp.,* 121 B.R. 257 (Bankr. D. Ariz. 1990)).

      10. Given the circumstances, the civil lawsuits if not stayed against the Officers will directly affect REO, its assets and its ability to pursue a successful plan of reorganization under Chapter 11. As stated, the Officers are subject to multiple civil lawsuits in their capacities as guarantors of certain debts of REO. If a judgment is entered against an Officer as a guarantor of REO, and if the Officer were to satisfy the judgment, "the law implies a promise of reimbursement" from REO. *Speight, McCue & Associates, P.C. v. Wallop*, 153 P.3d 250, 256 (Wyo. 2007) (citing *In re Jamison's Estate*, 202 S.W.2d 879, 883 (Mo. 1997). "Equity enforces the right to reimbursement by subrogation." *Id*. Consequently, the Officer will have a claim

4

against REO.  Effectively, an action against an Officer, as a guarantor, is essentially an "action where there is such identity between [REO] and [the Officer] that [REO] may be said to be the real party defendant and that a judgment against [the Officer] will in effect be a judgment or finding against [REO]."  *In re Calpine Corp.*, 365 B.R. 401, 408 (Bankr. S.D. N.Y. 2007).  Being a guarantor of a corporate debt does not automatically make an individual or entity a candidate for an extension of the automatic stay.  However, when "there is an identity of interest between the guarantors and the debtor such that a judgment against the guarantor would have a binding effect on the debtor," the stay should be extended.  *In re M.J.H. Leasing, Inc.*, 328 B.R. 363, 368 (Bankr. D. Mass. 2003).  Consequently, this Court should find that the automatic stay imposed as to REO applies to its Officers as well.

11. Alternatively, "[c]ourts consistently have found that § 105 may be used to stay actions against non-debtors", considering § 105 grants broader authority to courts than § 362.  *Calpine*, 365 B.R. at 409, n. 20 (citing *Queenie v. Nygard Intern.,* 321 F.3d 282, 288 (2nd Cir. 2003); *In re Lomas Financial Corp.,* 932 F.2d 147, 149 (2nd Cir. 1991); *In re Baldwin–United Corp. Litig.,* 765 F.2d 343, 348 (2d Cir.1985)).  "Under certain circumstances, a bankruptcy court has discretion to enjoin a civil proceeding against a non-debtor under § 105.  A request by a debtor for an injunction under § 105(a) pending confirmation of the debtor's plans for reorganization is regarded as a request for a preliminary injunction."  *In re Calpine Corp.*, 365 B.R. at 409.  For an injunction to issue under § 105, a court should evaluate the following factors:

> (1) whether there is a likelihood of successful reorganization; (2) whether there is an imminent irreparable harm to the estate in the absence of an injunction; (3) whether the balance of harms tips in favor of the moving party; and (4) whether the public interest weighs in favor of an injunction.  In evaluating these factors, the

> court takes a "flexible approach and no one factor is determinative."
>
> *Id.* (quoting *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992).

12. First, given the significant amount of revenue generated by REO, along with the potential availability of assets of the Officers' related entities, REO is a promising candidate for a successful reorganization. Second, in *Calpine*, the court determined that irreparable harm exists if there is "a significant burden and distraction of key employees from its restructuring efforts." *Id.* at 410. In this instance, if the Officers are required to defend the civil lawsuits, these integral and indispensable individuals will not be capable of putting forth their best efforts in making the reorganization successful. Third, when balancing the irreparable harm REO stands to suffer in the absence of a stay as to the Officers against the harm suffered by those entities that would not be permitted to proceed against the Officers, the balance of the equities weigh in REO's favor. Without the close involvement of the Officers, REO's reorganization almost certainly comes to a halt. REO would likely be forced to shut down and its assets would likely be sold piecemeal for nominal value as opposed to maximizing the value of REO's assets as an ongoing enterprise. Thus, most of REO's creditors are at a disadvantage if REO cannot attempt to reorganize. With the full attention of the Officers, REO is in a better position wherein it can formulate a Plan, and receive maximum value for its assets (if a liquidation or partial liquidation is deemed necessary). Lastly, the public interest factor weighs in favor of an injunction. Without the full attention of the Officers, the reorganization likely fails and approximately 114 employees are jobless. Further, REO's creditors will only receive maximum value on their claims if a reorganization is successful, which is more likely if the Officers are free from defending multiple lawsuits as corporate guarantors. Consequently, this Court should

6

impose injunctive relief under 11 U.S.C. § 105(a) and extend the automatic stay as to the Officers. See *In re Thorbardin Ranch, LLC*, Case No. 09-21157, <u>Order Granting Debtor's Motion to Extend Automatic Stay for a Limit Time</u>, (Bankr. D. Wyo. November 2, 2010).

13.     Because the Officers are the "sole participants in [REO's] rehabilitation, they should be free to devote their full efforts to the operation of the business and the formulation of a plan." *In re PTI Holding Corp.,* 346 B.R. 820, 828 (Bankr. D. Nev. 2006). "Any material diversion of their time and energies would result in a loss to the estate." *Id.* at 827. Such a determination has led courts to grant injunctions due to the irreparable harm to the estate and its reorganization efforts. REO contends that there is a strong likelihood of the success of its Chapter 11 case. There is substantial income being generated from its operations and its management team is highly experienced. Moreover, if the Officers are forced to focus their energies and resources on defending various civil lawsuits, it is possible that the otherwise successful reorganization will fail, leaving a substantial amount of people without jobs and reducing a viable enterprise to a liquidation process that will bring about a small fraction of its value to bear for all creditors.

**WHEREFORE**, REO respectfully requests that the Court extend the automatic stay under § 362 to the Officers, or in the alternative, issue a preliminary injunction under § 105 and stay all current and future civil lawsuits in which an officer of REO is a named co-defendant in the capacity of a guarantor of REO, and for such further and additional relief as to the Court may appear proper.

**DATED** this _11th_ day of August, 2011.

> RED EAGLE OIL, INC.
>
> By:__/s/_____
>       Bradley T. Hunsicker

        (Wyoming State Bar No. 7-4579)
        WINSHIP & WINSHIP, P.C.
        100 N. Center, Suite 600
        P.O. 548
        Casper, WY  82602
        (307) 234-8991

## CERTIFICATE OF SERVICE

I, Brad T. Hunsicker, hereby certify that a true and correct copy of the foregoing **Debtor's Motion to Extend Automatic Stay or Grant Preliminary Injunction** was served upon **The Office of the United States Trustee**, *electronically*, and served upon the below named **parties of interest** as addressed herewith and **all creditors** by depositing a copy thereof in the U.S. Mail, postage pre-paid, addressed as stated on the matrix attached hereto, this *11th* day of August, 2011.

| | |
|---|---|
| **P. Craig Silva, Attorney for** *Equitable Oil Purchasing Co.* PO Box 10700 Casper, WY 82602 | **Timothy Stubson, Attorney for** *DATS Trucking, Inc.* 159 N. Wolcott Street, Suite 200 Casper, WY 82601 |
| **Steven Greenlee, Attorney for** *Sapp Brothers/Sapp Brothers Travel Centers* **40 Inverness Drive East** **Englewood, CO 80112** | **Christopher Patrick** **Andrew Petrie, Attorneys for** *Hermes Consolidated, Inc.* **600 17th Street, Ste. 2400-S** **Denver, CO 80202** |

        ___/s/_____
        Bradley T. Hunsicker