C. M. Aron (WY Bar No. 5-1417)
Aron & Hennig, LLP
First Interstate Bank Building
221 Ivinson Street, Suite 200
Laramie, WY 82070
Tel: (307) 742-6645
Fax: (307) 742-7766
*Attorneys for Hermes Consolidated, Inc.,*
*d/b/a Wyoming Refining Company*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF WYOMING

In re:

RED EAGLE OIL, INC.

  Debtor.

Case No. 11-20857
Chapter 11

**WYOMING REFINING'S OBJECTION AND OPPOSITION TO DEBTOR'S MOTION TO EXTEND AUTOMATIC STAY OR GRANT PRELIMINARY INJUNCTION**

  Hermes Consolidated, Inc., d/b/a Wyoming Refining Company ("Wyoming Refining"), an unsecured creditor of Red Eagle Oil, Inc. ("Debtor") and a party in interest in this case, objects to and opposes Debtor's motion to extend the automatic stay to protect non-debtors who are guarantors of Debtor's obligations, particularly with reference to Brad Hinze who is a guarantor of only the Debtor's obligations to Wyoming Refining, and likewise opposes Debtor's alternative, request for a preliminary injunction barring pending claims against Debtor's guarantors [ECF No. 66].

  Debtor is a closely held corporation, which the Hinze family owns [ECF No. 66 at 1] and, predictably, counts multiple members of the Hinze family among its management and its most highly compensated employees. [ECF Nos. 20, 20-1]. In April of 2011, Debtor dramatically overextended itself to purchase petroleum products from multiple suppliers, including Wyoming Refining, on credit that it did not repay and had no intention to repay. Accordingly, Wyoming Refining sued Debtor and Brad Hinze, who personally guaranteed the debt Debtor owed Wyoming Refining.

  There is evidence Debtor intentionally withheld material information regarding its financial condition from Wyoming Refining until it could complete its April 2011 withdrawals of product from Wyoming Refining, and Debtor intentionally increased its April 2011 withdrawals to maximize its assets and correspondingly maximize Wyoming Refining's debt. While Debtor's filing stays Wyoming Refining's claims against it, including Wyoming Refining's fraud claim, Debtor's present motion to stay its creditors' claims against Debtor's guarantors evidences the breadth of Debtor's and its shareholders/officers/guarantors' scheme to swindle Debtor's creditors.

  This Court should recognize these actions for what they are, and not extend the automatic stay beyond what Section 362 provides.

Wyoming Refining's pending case against Brad Hinze – which Debtor's motion seeks to enjoin – is merely Wyoming Refining's good faith attempt to enforce Brad Hinze's 1999 personal guaranty of Debtor's indebtedness. Wyoming Refining obtained that personal guaranty as security should Debtor default on its credit agreement with Wyoming Refining, including a default resulting from the company's bankruptcy filing.

Wyoming Refining's pending case against Brad Hinze will not impact Debtor because it is <u>not</u> an action against an individual: (1) whose liability arises out of alleged personal liability for misconduct while an officer, director, or employee of a corporate debtor; (2) who has either a contractual or common law right to have the debtor corporation indemnify him (and, similarly, is not an action where he and the Debtor have any reciprocal rights of contribution because here their liability is joint and several); or (3) who would then have claims against a directors and officers' liability, or other insurance, policy that would be Section 541 property of Debtor's bankruptcy estate.

### FACTUAL BACKGROUND

On June 7, 2011, Wyoming Refining filed suit against Debtor and Brad Hinze in the United States District Court for the District of Colorado, Civil Action No. 11-cv-01486-RPM-BNB ("Colorado Litigation"). [*See generally* Complaint [Exh. 1]]. That Complaint asserts seven claims against Debtor, but only one claim against Brad Hinze. [*Id.*]. The lone claim against Brad Hinze is based on his personal guaranty of Debtor's debts to Wyoming Refining ("Guaranty"). [*Id.*]. Brad Hinze executed the Guaranty in 1999 and admits: (1) he never cancelled it; and (2) it is still in full force and effect. [*Id.* at ¶ 14; Answer [Exh. 2] at ¶ 14]. Brad Hinze signed the Guaranty in his personal capacity. [Guaranty [Exh. 1 at Exh. 2]]. Wyoming Refining required the Guaranty as consideration for its credit agreement with Debtor [*see* Guaranty [Exh. 1 at Exh. 2] at Recitals 1-3] – which separate agreement Brad Hinze executed on the same day as the Guaranty in his representative capacity as Debtor's officer and agent. [*Compare* Agreement [Exh. 1 at Exh. 1] at p. 2 *with* Guaranty [Exh. 1 at Exh. 2] at p. 2]. Debtor and Brad Hinze filed their Answer on July 8, 2011 – or, before Debtor filed for Chapter 11 bankruptcy protection. [*See generally* Answer [Exh. 2]]. In their Answer, Debtor and Brad Hinze admitted their respective liability for breach of contract, and contested only Wyoming Refining's damages calculation.

On August 4, 2011, Wyoming Refining filed a motion for summary judgment on its claim against Brad Hinze. The motion is premised on his previous admissions of liability, but also includes evidence establishing the amount Brad Hinze owes Wyoming Refining is $737,349.64, plus contractual interest, and attorneys' fees, costs and expenses Wyoming Refining necessarily incurred to collect the indebtedness. [Motion for Summary Judgment [Exh. 3]]. Debtor, through counsel, admitted in the parties' proposed scheduling order filed in the Colorado Litigation that Wyoming Refining's motion "appears adequately supported under Rule 56, FED. R. CIV. P." [Proposed Scheduling Order [Exh. 4] at ¶ 3(b)(ii)].

This morning, Brad Hinze filed his response – which admits liability up to $100,000 [Affidavit of Brad Hinze [Exh. 6] at ¶ 5 ("In 1999, I believe it was the understanding of all parties to the [Guaranty] that gasoline prices would remain stable and that any exposure under the [Agreement] would be limited to no more than $100,000")], attempts to insert additional, contradictory terms into the unambiguous Guaranty [*compare id. with* Guaranty [Exh. 1 at Exh. 2] at Recital 3 ("Guarantor is willing to furnish such security in the form of a personal guaranty of payment of the current and <u>future indebtedness</u>." (emphasis added)) *and* § 1 ("Guaranty guarantees prompt repayment when due of <u>all amounts owing</u> on account in the past or <u>in the future by Debtor</u> to [Wyoming Refining] for petroleum products sold to Debtor."

- 2 -

(emphasis added))], and does not contest Wyoming Refining's damages calculation [*see* Response [Exh. 5]]. Wyoming Refining's motion for summary judgment will be fully briefed and ripe for decision by no later than September 15, 2011 when its reply is due.

### A. Debtor's Motion Fails To Present Any Facts Establishing Debtor Would Be Entitled To Stay The Colorado Litigation Against Brad Hinze.

Pursuant to 11 U.S.C. § 362, creditors' actions to enforce claims against debtors are automatically stayed. Congress made no provision to extend the automatic stay to non-debtors. The courts have not extended this protection to non-debtors (including those who have personally guaranteed debtor's debts) under 11 U.S.C. § 105, except in "unusual circumstances" – *i.e.* "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third party defendant will in effect be a judgment or finding against the debtor." *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 998-99 (4th Cir. 1986) (citing as an example "a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case"). There are no such "unusual circumstances" and no such identity here. Rather, Brad Hinze's defense that his guaranty is limited to $100,000, regardless of how contradictory and frivolous, is unique to his guaranty.

Further, the party asking a court to extend the automatic stay to non-debtors has the burden to establish facts demonstrating that extending the stay to its guarantors would be applicable and appropriate. *Beran v. World Telemetry, Inc.*, 747 F. Supp. 2d 719, 723 (S.D. Tex. 2010); *see also* 2 WILLIAM L. NORTON, JR., NORTON BANKRUPTCY LAW & PRACTICE § 43:4 (3d ed. Supp. 2010) (noting that in bankruptcy court proceedings, "the party seeking to extend the stay will bear the burden to show that 'unusual circumstances' exist warranting such an extension of the stay to a nondebtor").

Here, instead of even attempting to meet its burden, Debtor bases its motion entirely on speculation that the pending claims against Debtor's guarantors may impact some future, yet-to-be-written plan of reorganization. [*See, e.g.*, ECF No. 66 at ¶¶ 8 (". . . could seriously impair. . ."), 8 (". . . could . . . very well likely lead to . . ."), 12 ("Without the close involvement of the Officers, REO's reorganization almost certainly comes to a halt. REO would likely be forced to shut down . . ."), 13 (". . . it is possible that the otherwise successful reorganization will fail . . .")].

Because Debtor has presented no factual support to establish any basis for its motion to extend the Section 362 stay or otherwise to enjoin the Colorado Litigation, the motion fails.

**B.    The Colorado Litigation – Like The Other Three Cases Debtor Seeks To Stay – Will Cause Little Or No Distraction From Debtor's Bankruptcy Proceedings.**

The thrust of Debtor's motion focuses on the "valuable time" Debtor's guarantors will take away from Debtor's reorganization if involved in the pending civil suits against them and the distraction "from assisting in the creation of a comprehensive, confirmable Chapter 11 Plan of Reorganization and Disclosure Statement" those suits will supposedly cause. [*See, e.g.*, ECF No. 66 at ¶ 7]. Setting aside the Debtor's self-serving charade that its officers must focus all of their time and attention on Debtor's reorganization, where each officer supposedly performs the same functions as the others [ECF No. 66 at ¶ 4], the Colorado Litigation will neither consume the guarantors' time nor distract them from Debtor's hypothetical reorganization.

Debtor has stated a rote, and unsupported, argument that the entire Hinze family is critical to the reorganization effort, and not one of them can take even so much as an hour away in order to address other matters. This fallacious position is perhaps best demonstrated by Debtor's contention, pleaded in its August 17 motion to vacate final hearing, that its officers cannot even appear to participate at a short hearing set for the sole purpose of assisting Debtor and advancing its ability to reorganize:

> Pursuant to the First Order, a final evidentiary hearing on the Motion is set for August 22, 2011. . . . [I]f the shareholders/managers of [Debtor] are forced to take time away from managing [Debtor]'s day-to-day business operations [to attend the final hearing on Debtor's motion for entry of an order authorizing use of cash collateral] it is quite possible that [Debtor]'s attempt at reorganization would be adversely affected.

[ECF No. 82 at ¶ 4].

As stated above: (1) the Colorado Litigation only asserts <u>one</u> claim against <u>one</u> of Debtor's guarantors, Brad Hinze; (2) Brad Hinze has already admitted liability, such that there cannot properly be a fight on that aspect of Wyoming Refining's claim; (3) Brad Hinze contests only Wyoming Refining's damage calculations, the proof of which is a simple accounting exercise; and (4) Wyoming Refining's pending motion for summary judgment – which Brad Hinze admits is "adequately supported" – will resolve the only remaining portion of the Colorado Litigation: the amount of Brad Hinze's admitted personal liability. Further, Brad Hinze filed his response to Wyoming Refining's motion for summary judgment on August 29 and, therefore, his involvement in the Colorado Litigation is no longer necessary – so the Colorado Litigation will not be any distraction to Debtor's presently non-existent reorganization plan. Judge Matsch in the District of Colorado will be able efficiently to resolve all of the active Colorado Litigation on its merits by no later than September 15.

Notably, the Colorado Litigation is the <u>only</u> case in which Brad Hinze is a guarantor defendant. He is not involved in multiple suits, much less the required numerous suits, that would justify extending to him the protections of the automatic stay.

Likewise, the three other cases for which Debtor's motion seeks to extend the automatic stay or to enjoin the case do not involve Brad Hinze and are mere makeweights. Further, they too are close to being resolved, and, therefore, will not be the time-consuming labors Debtor alleges in mere conclusory fashion.[1] Therefore, the courts presiding over these disputes should

---

[1] First, the Fifth Judicial District Court of the State of Wyoming has already closed the Sapp Bros., Inc. case because Debtor filed its petition. [*See* Sapp Bros., Inc. Docket [Exh. 7]]. Second, the United States District Court for

resolve them quickly and Debtor's guarantors will be will be free to devote their full attention, seven days a week (as Debtor's motion alleges they need to do [*see* ECF No. 66 at ¶ 4]), to creating and implementing Debtor's hypothetical reorganization plan.

Debtor's motion also lumps all three "guarantors" together, and, as a result, misleadingly obscures and inappropriately aggregates their individual involvement. While Dale Hinze is a defendant in the DATS Trucking, Equitable Oil, and Sapp Bros. matters, he is not a defendant in the Colorado Litigation. Brad Hinze and Bryan Hinze are each defendants in only one case – the Colorado Litigation and DATS Trucking matter, respectively – so denying Debtor's stay with respect to Brad Hinze presents a dramatically smaller "burden" than Debtor's motion contends would be the case. Thus, even if this Court were to conclude Dale Hinze's role as Debtor's officer, employee, and personal guarantor creates a sufficient burden to stay the cases against him, it should limit its Order to apply only to those claims.

Debtor has no plan of reorganization, and has not offered even an outline of any such plan. Debtor's bankruptcy is not "prepackaged" and Debtor did not include with its petition or its motion any draft disclosure statement and/or proposed plan of reorganization. Rather, Debtor's motion admits neither Debtor nor its officers presently have a "comprehensive, confirmable Chapter 11 Plan of Reorganization and Disclosure Statement." [ECF No. 66 at ¶ 7]. Debtor's bare assertions that cases against its guarantors will unreasonably impinge on Debtor's ability to execute a plan of reorganization are, therefore, pure speculation that Debtor cannot support or neither the Court nor creditors can evaluate.

In sum, Debtor has not established the pending claims against its guarantors will even minimally impact any to-be-proposed plan or Debtor's ability to reorganize. This Court should, therefore, deny Debtor's motion.

---

the District of Wyoming granted summary judgment on DATS Trucking, Inc.'s claims against Debtor on July 21, 2011, before Debtor filed its petition, and the DATS entities filed a motion for summary judgment against Bryan Hinze and Dale Hinze on August 12, 2011. [*See* DATS Trucking, Inc. Docket [Exh. 8]]. That motion is pending and, under the Federal Rules, Bryan Hinze's and Dale Hinze's response is due September 2, 2011. And third, in the Equitable Oil matter, Equitable Oil asserts only three claims (breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment) against Hinze, Inc. (Debtor's former name) and Dale Hinze. [*See* Equitable Oil Complaint [Exh. 9]]. The Section 362 automatic stay halts the claims with respect to Debtor leaving only two issues regarding Dale Hinze: (1) whether his personal guaranty is enforceable; and (2) the extent of Equitable Oil's damages. [*Id.* at ¶¶ 1-9, 13-17; Debtor's Answer [Exh. 10] at ¶¶ 1-9, 13-17].

- 5 -

### C. Wyoming Refining's Claims Against Brad Hinze Do Not Impact Debtor's Assets.

Wyoming Refining's claim against Brad Hinze seeks to enforce the Guaranty he executed as further consideration for Wyoming Refining's agreement to enter into a sales agreement with Debtor. [Guaranty [Exh. 1 at Exh. 2] at Recital 2]. Under the Guaranty, Brad Hinze pledged his *personal* income and assets as collateral to repay credit Wyoming Refining extended to Debtor, should the Debtor default and / or file bankruptcy. [*Id.* at Recital 3, § 1]. In fact, this was the express intent of the Guaranty [*id.*], and is the very purpose of all personal guaranties of corporate borrowings. *See*, *e.g.*, *Nauman v. CIT Group/Equip. Fin.*, 816 P.2d 883, 885 (Wyo. 1991) ("A bankruptcy court has no power to discharge the liabilities of a bankrupt's guarantor, even if the creditors consent as part of the reorganization plan.").

Accordingly, Wyoming Refining's Colorado Litigation claim – and pending motion for summary judgment – against Brad Hinze seeks a judgment against Brad Hinze *personally*. This is not a claim that would or could form any basis for some manner of claim Brad Hinze could assert against the company for indemnity, reimbursement, or insurance coverage. *See generally* WYO. STAT. ANN. § 17-16-859 (limiting a corporation's ability to indemnify a director or officer to those situations for which WYO. STAT. ANN. §§ 17-16-850 – 17-16-858 specifically provide; none of which involve an individuals' guaranty of corporate debt).

If Judge Matsch enters judgment in Wyoming Refining's favor, that judgment will permit Wyoming Refining to attach Brad Hinze's *personal* assets and garnish Brad Hinze's *personal* income. According to Debtor's motion for leave to pay employees [ECF Nos. 20, 20-1], Brad Hinze is the Debtor's fourth highest compensated employee – earning more than Dale Hinze (Debtor's President), Bryan Hinze (Debtor's Vice President), Scott Hinze (Debtor's Secretary), and Judith Hinze (Debtor's Assistant Secretary). [ECF Nos. 20-1, 66]. Brad Hinze's *personal* wages are Brad Hinze's *personal* property; not Debtor's corporate property. [ECF Nos. 20 at ¶¶ 2-4, 20-1]. This is the type of *personal* asset from which Wyoming Refining will seek payment without any effect on the estate or some proposed plan of reorganization.

Debtor cites *A.H. Robins*, and its progeny, as providing a basis to extend the automatic stay to its officers in order to protect them from their personal guaranties. Debtor is wrong. *A.H. Robins* is a very different case, based on very different facts and circumstances. *A.H. Robins* arose in the context of an intentional tort, based on a dangerous contraceptive device (the Dalkon Shield), that had injured thousands of consumers. When "[c]onfronted, if not overwhelmed," with those intentional tort suits against the corporate entity, A.H. Robins filed Chapter 11. *A.H. Robins*, 788 F.2d at 996. In addition to the Section 362 automatic stay, the Fourth Circuit stayed claims against the company's officers named as defendants in those tort claims because: (1) A.H. Robins had agreed to indemnify its officers for their official actions for which the third parties had sued them; (2) A.H. Robins had purchased insurance to cover harms caused by those officers it had agreed to indemnify; and (3) the claims A.H. Robins faced were thousands of international tort claims – based on the officers' actions in their official capacity – and, therefore, would implicate the A.H. Robins' bankruptcy estate's indemnity and insurance agreements. *Id.* at 996, 998-1002, 1008-1009. Simply put, due to the company and individuals' overwhelming tort liability, indemnity agreements, and the fact that any insurance payout on a judgment against an officer would drain property of A.H. Robins' bankruptcy estate, that court extended the stay.

Here, there are no such facts. Debtor has failed to present any evidence of widespread claims that would overwhelm the bankruptcy estate, and failed to show the existence of any indemnity or insurance agreements (because there are no such agreements). Wyoming Refining's claim against Brad Hinze is based on his personal Guaranty to Wyoming Refining,

which he executed to induce Wyoming Refining to enter into a purchase agreement with Debtor – not thousands of tort claims based on his acts committed on behalf of the corporation. Brad Hinze affirmatively represented in his Rule 26(a) Initial Disclosures that there is no insurance agreement that would indemnify Brad Hinze against Wyoming Refining's breach of contract claim. [*See* Brad Hinze's Initial Disclosures [Exh. 11] at 5-6].

Further, Wyoming Refining's claim against Brad Hinze does not: (1) increase the Debtor's liability (because Debtor has already admitted liability for breach of contract and Wyoming Refining did not plead its claim for statutory treble damages against Brad Hinze); or (2) pose a risk of inconsistent judgments (Debtor and Brad Hinze have admitted liability for the unpaid fuel deliveries, and the sole issue remaining as against Brad Hinze is the simple exercise of accounting for the volumes of product delivered and resulting amounts owed). Accordingly, neither *A.H. Robins* nor its rationale justifies extending the automatic stay to Brad Hinze.

Debtor's assertion of the hypothetical that the guarantors/officers may at some future date contribute some unidentified personal assets to the Debtor's estate as a part of Debtor's unformed plan of reorganization [ECF No. 66 at ¶ 8], and resulting conclusion that this Court must stay the pending cases against Debtor's guarantors because they "could seriously impair [Debtor]'s ability to reorganize and very well likely lead to the [o]fficers being forced to file individual bankruptcies, which would compromise their ability to assist in funding a plan with their personal assets" [*id.*], do not affect the analysis or result. First, Debtor's motion admits any personal assets its officers may ultimately "conceivab[ly]" contribute as a part of a future reorganization plan are not a part of Debtor's bankruptcy estate and, therefore, any action against Brad Hinze's personal assets does not affect Debtor's bankruptcy estate. Second, the officers have not made any such commitment, and there is no showing of any such need or intent, so the Debtor's argument is pure speculation. Third, Debtor has not advanced any plan of reorganization, or even an outline of one – so there is no evidence that any such hypothetical plan would require the officers to contribute any additional capital or personal assets – or any evidence to permit the Court to evaluate: (1) whether the officers presently have sufficient assets to successfully recapitalize Debtor's reorganization efforts; (2) whether those assets would be necessary to any such reorganization; or (3) whether the pending claims against Debtor's officers for their personal obligations would in fact impair their ability successfully to recapitalize Debtor's reorganization efforts. Without this evidence, Debtor's "parade of horribles" is nothing more than a scare tactic and cannot form any basis on which this Court could sustain Debtor's requested injunction.

Finally, Debtor is wrong when it asserts that, if Brad Hinze performs his guaranty contract with Wyoming Refining, the law creates a new claim in Brad Hinze against the Debtor and that claim will expand Debtor's liability. [ECF No. 66 at ¶ 10]. First, and foremost, for each and every dollar Wyoming Refining recovers from Brad Hinze, the true fact is that the amount the Debtor owes decreases by one dollar. If Brad Hinze then asserts a claim against Debtor, the net amount Debtor owes remains unchanged. Second, the very case Debtor cites for this proposition instructs that, if Brad Hinze – as guarantor – pays Wyoming Refining under his personal guaranty, the law subrogates Brad Hinze to Wyoming Refining's claim against Debtor. *Speight, McCue & Assocs., P.C. v. Wallop*, 153 P.3d 250, 256 (Wyo. 2007) ("Thus, a guarantor who pays the debt or judgment of another, 'at least as against the debtor primarily liable, is subrogated to all the rights and remedies of the creditor, and this even without formal assignment of the debt or judgment.'"). While subrogation would change the number of Debtor's creditors on this debt from one to two, it will have no net effect on the total amount of the claim against the estate (and would now be one that is partly Wyoming Refining's claim and partly Brad Hinze's subrogee claim).

As a result, Debtor has not – and cannot – factually establish that a judgment against Brad Hinze in the Colorado Litigation will impact or reduce Debtor's bankruptcy estate, and, therefore, there is no basis to extend the automatic stay to Brad Hinze.

**D.   Debtor's Request For A Section 105 Preliminary Injunction Fails.**

Just as Debtor fails factually to establish any proper basis on which this Court should extend the Section 362 automatic stay to Debtor's guarantors, so too Debtor fails factually to support its request for a Section 105 preliminary injunction. *In re CCDC Fin. Corp.*, 135 B.R. 423, 425 (Bankr. D. Kan. 1992) ("Because the debtor is seeking an injunction, this Court is governed by the general principles applicable to injunctions. . . . 'The movant's burden of proof is a heavy one and must be supported by substantial evidence, the quantum of which will necessarily vary depending on the scope and duration of the stay sought.' " (citing *In re TRS, Inc.*, 76 B.R. 805, 808 (Bankr. D. Kan. 1987))). Accordingly, Debtor's motion for an absolute and unlimited stay / injunction must fail.

But, even if Debtor had factually supported its request for a Section 105 preliminary injunction, an impartial review of the balancing factors requires that this Court deny Debtor's request. Under Section 105, the Court must balance the following factors to determine if a preliminary injunction is appropriate:

<u>Whether there is a likelihood of successful reorganization</u>: Debtor has provided no evidence – or even argument – suggesting it is likely to reorganize successfully. Debtor's bare statements that it will likely come out of bankruptcy simply cannot carry the day. In fact, until Debtor has prepared, filed, and received this Court's approval of a reorganization plan – which its motion admits it has not done – this fact must weigh against an injunction.

<u>Whether there is an imminent irreparable harm to the estate in the absence of an injunction</u>: As explained above, the Colorado Litigation will not pose "a significant burden and distraction of key employees from its restructuring efforts." Brad Hinze is the only employee the Colorado Litigation impacts, and he already completed and filed what should be his last obligation in that case. Judge Matsch will be able to resolve all that remains in the Colorado Litigation (and that Section 362 has not already stayed), including the amount of Brad Hinze's liability, after no later than September 15.

Tellingly, Judge Matsch declined Brad Hinze's request that he stay the Colorado Litigation (obliquely asserted in his assertions contained in the proposed Scheduling Order), declined to enter a scheduling order (foreshadowing the absence of any need to go beyond the pending motion), and directed Brad Hinze to respond to the pending motion for summary judgment. [Proposed Scheduling Order [Exh. 4] at ¶¶ 2, 3(b)(ii)]; Aug. 18, 2011 Courtroom Minutes [Exh. 12]]. As such, granting Debtor's requested injunction may actually prolong Brad Hinze's distraction and involvement in the Colorado Litigation by delaying a final determination of his liability. Moreover, Brad Hinze has, thus far, admitted liability and provided no alternative damages calculation, so Debtor's claims that the Colorado Litigation will distract and require considerable amounts of Brad Hinze's time ring hollow. Finally, because Wyoming Refining's claim against Brad Hinze does not impact Debtor's assets and does not increase Debtor's liabilities, Wyoming Refining's claims against Brad Hinze cannot cause any harm – imminent or otherwise – to Debtor's bankruptcy estate in the absence of an injunction.

<u>Whether the balance of harms tips in favor of the moving party</u>: Debtor's speculation regarding the harm it will suffer is based on the false premise that the Colorado Litigation will force Brad Hinze to divert his attention away from the reorganization effort. That is simply untrue. Brad Hinze has a fiduciary responsibility to act in the best interests of all of Debtor's creditors. One lawsuit does not justify his abandonment of that duty; and, if it did, he should

resign.  But, that is not what is required here.  Wyoming Refining's single claim against Brad Hinze:  (1) is straightforward and there is no contest as to the fact of his personal liability; (2) is not based on Brad Hinze's actions as a corporate representative; and (3) does not affect the Debtor's property or bankruptcy estate.  Because Debtor will suffer no harm if the Court denies its injunction and Wyoming Refining will be harmed if the Court grants the injunction – Wyoming Refining's right to enforce its private contract will be delayed until a time where Debtor speculates Brad Hinze might be able to make a contribution to the Debtor [ECF No. 66 at ¶ 3] – the balance of harms tips in favor of denying Debtor's injunction.

<u>Whether the public interest weighs in favor of an injunction</u>:  While public policy may favor reorganization of bankrupt entities, it also favors a party's performance of its contractual obligations and the speedy resolution of suits and claims – unrelated to the bankruptcy – to fully compensate injured plaintiffs.  Therefore, this factor is, at best, a wash for Debtor.

This Court must, therefore, deny Debtor's request for a Section 105 preliminary injunction.

**E.    If This Court Were To Stay Wyoming Refining's Claim Against Brad Hinze, It Should Also Order Brad Hinze To Post A Bond To Protect Wyoming Refining.**

Wyoming Refining has demonstrated it is likely to prevail on its claim for breach of contract against Brad Hinze in the Colorado Litigation:  (1) Brad Hinze and Debtor have admitted liability; (2) Wyoming Refining moved for summary judgment (including presenting evidence of the amount of its damages); (3) Brad Hinze admitted Wyoming Refining's motion for summary judgment is "adequately supported;" and (4) Brad Hinze's response inappropriately attempts to rewrite the Guaranty and does not challenge Wyoming Refining's damage calculation.  Therefore, should this Court grant the Debtor's requested injunction, it should also require Brad Hinze post a bond of not less than $750,000 to protect Wyoming Refining under Fed. R. Bankr. P. 7065, 9014 and Fed. R. Civ. P. 65(c).  Wyoming Refining recognizes this Court has discretion and the Bankruptcy Rules do not require a bond, but, in this instance, a bond is necessary to provide adequate security for Debtor's requested injunctive relief, and to prevent the Debtor from blithely setting aside its guarantor's personal assets for the benefit of its corporate creditors and the detriment of the guarantors' personal creditors who have valid claims against them.

**CONCLUSION.**

For all of these reasons, this Court should deny Debtor's motion.

Dated this 29th day of August 2011.

/s/
C.M. Aron, Bar #5-1417
Aron & Hennig, LLP
221 Ivinson Street, Suite 200
Laramie, WY 82070
Tel: (307) 742-6645
Fax: (307) 742-7766
*Attorneys for Hermes Consolidated, Inc., d/b/a Wyoming Refining Company*

## CERTIFICATE OF SERVICE

      The undersigned hereby certifies that on the 29th day of August, 2011, a true and correct copy of the foregoing document was served electronically upon the Office of the United States Trustee, Debtor's counsel, and all other parties registered as CM/ECF users in this case via the Court's CM/ECF electronic mail service.  The foregoing document was also served upon the following of the 20 largest unsecured creditors by depositing a copy thereof in the U.S. Mail, postage pre-paid, addressed as stated below.

Ameriquest
PO Box 828997
Philadelphia, PA 19182-8997

Frontier Oil & Refining
Dept. 566
Denver, CO 80271-0566

Peterbuilt of Wyoming
4113 W. Yellowstone Hwy
Casper, WY 82602-2335

Big D Oil Co.
PO Box 1378
Rapid City, SD 57709-1378

Wyoming Machinery Co.
PO Box 2335
Casper, WY 82602-2743

J.H. Kaspar Oil Co.
PO Box 448
Rawlins, WY 82301

Polar Service Center
1323 Taylor Place
Billings, MT 59101-7356

Big Horn Tire
196 Hwy 16 East
Buffalo, WY 82834-9347

Jefferson Partners LP
2100 East 26th Street
Minneapolis, MN 55485-7246

Grizzly Maintenance Service
PO Box 368
Casper, WY 82602

Amcon Distributing Co.
PO Box 2243
Rapid City, SD 57709

Slater Oil
PO Box 950
Scottsbluff, NE 69363-0950

SB Fuels of Wyoming
12500 I-80 Service Road
Cheyenne, WY 82009-8410

S&P Brake Supply
PO Box 30296
Billings, MT 59107-0296

Equitable Oil Purchasing
PO Box 2360
Casper, WY 82602

I-State Truck Center
NW 7246
PO Box 1450
Minneapolis, MN 55485-7244

      /s/_____
      C.M. Aron