Bradley T. Hunsicker
(Wyoming State Bar No. 7-4579)
WINSHIP & WINSHIP, P.C.
100 North Center Street, Sixth Floor
PO Box 548
Casper, WY 82602

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| RED EAGLE OIL, INC. | ) | Case No. 11-20857 |
| | ) | CHAPTER 11 |
| Debtor. | ) | |
| | ) | |

## DEBTOR'S MOTION FOR ENTRY OF AN ORDER REJECTING EXECUTORY CONTRACT

**COMES NOW** Red Eagle Oil, Inc., a Wyoming Corporation ("REO"), as Debtor-in-Possession, by and through its counsel, and hereby moves this Court for entry of an order rejecting that certain "Exclusive Right to Sell Listing Contract" more thoroughly described below *nunc pro tunc* (the "Motion"). In further support of this Motion, REO alleges:

### BACKGROUND

1.  The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this proceeding and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is 11 U.S.C. § 365.

2.  On August 1, 2011 (the "Petition Date"), REO commenced this case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Wyoming.

3.  REO has continued in possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy

Code.

4. REO currently owns the "operation" portion of fifteen (15) convenience stores ("C Stores") in Wyoming. REO only owns the real property (i.e., the land and buildings) associated with two (2) of the C Stores. These two (2) C Stores are located in Cody, Wyoming, and are more commonly known as Red Eagle Food Store #2 and Red Eagle Food Store #4 (collectively referred to herein as "the REO Stores"). The real property associated with the other thirteen (13) C Stores that are operated by REO are owned by other entities (hereinafter "Other Entities"). REO and the Other Entities share common ownership (i.e., the shareholders of REO are the shareholders or members of the Other Entities).

5. On January 31, 2011 (pre-petition), REO entered into an "Exclusive Right to Sell Listing Contract" (hereinafter "Broker Agreement") with Broker One Real Estate, Inc. (hereinafter "Broker One"). The Broker Agreement gives Broker One the exclusive right to sell the REO Stores until October 31, 2011, subject to an additional 120 day tail. It is important to note that the Other Entities entered into similar agreements with Broker One. It was the intent of REO and the Other Entities to sell the operations portion and the real property associated with all fifteen (15) C Stores and apply the proceeds from the sale to certain secured and unsecured debts of REO and the Other Entities. As of the present date, Broker One has only been successful in selling one (1) C Store.

**RELIEF REQUESTED**

6. REO is seeking to reject the Broker Agreement which is attached hereto as Exhibit "A" and incorporated herein by reference.

7. The Broker Agreement requires, among other things, that REO pay Broker One as compensation for Broker One's services a sum equal to 5% of the selling price if: (1) REO

rejects or fails to accept a written offer to purchase the REO Stores from a ready and willing buyer; (2) REO refuses or fails to close a sale of the REO Stores after entering into a fully executed contract; or, (3) ownership or any other transaction of the REO Stores (sale, lease, etc.) occurs within 120 days after October 31, 2011 (the 120 day tail referenced above).

8.    It remains the intent of REO and the Other Entities to sell the operations portion and the real property associated with all fifteen (15) C Stores.

9.    In its business judgment, REO has decided that in order to maximize the revenue from a future sale of the REO Stores (and related C Stores) it is imperative to bring in an entity that is experienced not only in the sale of distressed convenience stores, but also in running a sales process for an entity in bankruptcy.  Given the unique and intricate relationships between REO and the Other Entities, a future sale of the REO Stores and the C Stores will be complex. In its business judgment, REO believes that Broker One does not have the requisite ability to facilitate the sale of the REO Stores and the other C Stores.  Specifically, Broker One has listed the C Stores for sale for the last nine (9) months, with only one (1) C Store being sold.  REO is not confident that Broker One can sell the REO Stores and the C Stores for maximum value. Further, REO believes that Broker One has not conducted itself in accordance with industry standards during the listing period considering that based on representations made by Broker One, REO believed the REO Stores and the C Stores would be sold in June/July 2011.  This sale never took place.

10.    In its business judgment and based on its prior experiences with Broker One, REO believed it was necessary to seek out entities from across the nation that are experienced in marketing and selling distressed convenience stores ("Strategic Sellers").  REO has been in contact with several Strategic Sellers.  One entity in particular has a proprietary database of over

12,000 local jobbers, regional jobbers, national consolidators, capital providers to the industry, truck stop chains, individual store buyers, REITs, alternate use buyers, and other potential buyers. Reaching out to such an extensive database will allow REO and the Other Entities to maximize competition for the assets.

11. Upon information and belief, Broker One has only been in communication with five (5) potential buyers over the last nine (9) months (apart from the entity that REO believed was actually purchasing the REO Stores and C Stores in June/July 2011). The need for bringing in a Strategic Seller is obvious.

12. In order to maximize the proceeds from a future sale of the REO Stores (and the C Stores), REO must bring in a Strategic Seller. The entity that this Court authorizes REO to employ to assist with the sale of the REO Stores will likely require a commission related to the sales price.[1] In its business judgment, REO believes that it is not financially responsible to assume the Broker Agreement (which would require a 5% commission to Broker One), and pay the fees and costs of a Strategic Seller, considering Broker One has not brought any value to the estate, and is not expected to do so in the future. Accordingly, REO is requesting that it be authorized to reject the Broker Agreement.

## AUTHORITIES

13. Section 365 of the Bankruptcy Code states that a debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor". 11 U.S.C. § 365(a). The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor. *In re J.H. Land &*

---

[1] It is important to note that any Strategic Seller that is approved by the Court will also be employed by the Other Entities. Thus, the fees/costs associated with employing a Strategic Seller will have to be apportioned between REO and the Other Entities. Nothing in this Motion should be construed to indicate that REO believes it will solely be responsible for all the fees/costs associated with utilizing a Strategic Seller.

*Cattle Co., Inc.,* 8 B.R. 237, 238 (Bankr. W.D. Okla. 1981); *In re Crescent Oil Co., Inc.,* 2010 WL 2721878, 3 (Bankr. D. Kan. 2010). See Also *Nat'l Labor Relations Bd. v. Bildisco and Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) (stating that "the usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test"). The business judgment standard mandates that a court approve a debtor's business decision unless the decision is the product of "bad faith, whim or caprice." *Lubrizon Enters v. Richmond Metal Finishes,* 756 F.2d 1043, 1047 (4th Cir. 1980).

14. REO has evaluated the Broker Agreement in the context of the Bankruptcy Code. In the exercise of its business judgment and in light of the facts and circumstances surrounding the Broker Agreement, REO has determined that the Broker Agreement is not useful for its ongoing operations, and as a result, such Broker Agreement is more burdensome than beneficial to the estate. The Broker Agreement represents an executory contract which, based on REO's careful review, is unnecessary for REO's current needs and is essentially a heavy burden on the estate. In fact, had REO not relied upon the representations of Broker One in regard to the June/July 2011 sale the bankruptcy filing would not have been filed on an emergency basis; in fact, it is conceivable that the bankruptcy filing would not have been necessary at all.

15. REO seeks to reject the Broker Agreement, effective as of the Petition Date, to ensure that any claims under such will be treated as unsecured pre-petition claims in accordance with section 365(g)(l) of the Code. See *Nat'l Labor Relations Bd. v. Bildisco and Bildisco (In re Bildisco)*, 465 U.S. 513, 530 (1984) (stating that rejection relates back to the petition date). REO does not believe the Broker Agreement provides a basis for a claim for administrative expense priority because the Broker Agreement is a burden rather than a benefit to the estate. See *In re O.P.M. Leasing Services, Inc.,* 56 B.R. 678, 683 (Bankr. S.D.N.Y. 1986).

5

16. The equities surrounding the circumstances of the Broker Agreement weigh in favor of approving an executory contract rejection date in accordance with this Motion. See *In re Thinking Machine Corp.*, 67 F.3d 1021, 1028 (1st Cir. 1995) (stating that "bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation"). Simply stated, rejection of the Broker Agreement is in the best interests of REO and the estate.

**WHEREFORE** REO respectfully requests that this Court enter an order rejecting the Broker Agreement listed at Exhibit "A" *nunc pro tunc* to the Petition Date, and granting such other and further relief as is just and proper.

**DATED** this 13th day of September, 2011.

        RED EAGLE OIL, INC.

        By:__/s/_____
         Bradley T. Hunsicker
         (Wyoming State Bar No. 7-4579)
         WINSHIP & WINSHIP, P.C.
         100 N. Center, Suite 600
         P.O. 548
         Casper, WY  82602
         (307) 234-8991

## NOTICE OF TIME TO OBJECT

**YOU ARE HEREBY NOTIFIED** that if you desire to oppose the Debtor's **Motion for Entry of an Order Rejecting Executory Contract** filed on behalf of Red Eagle Oil, Inc. you are required to file with the Court and serve on Bradley T. Hunsicker, attorney for the Movant, whose address is shown above, a written objection to the motion on or before **September 30, 2011** or the relief requested may be granted by the Court.

        ___/s/_____
        Bradley T. Hunsicker

## CERTIFICATE OF SERVICE

    I, Bradley T. Hunsicker, hereby certify that a true and correct copy of the foregoing **Debtor's Motion for an Order Rejecting Executory Contract** and **Notice of Time to Object** was served upon **Broker One Real Estate, Inc. through its registered agent Randall S. Hall** in the United States via first class mail postage prepaid to 550 N Poplar, Casper, WY 82601, **The Office of the United States Trustee**, by electronic mail, and all parties requesting notice and registered on the ECF system this 13th day of September, 2011.

                                                                \_\_\_/s/_____
                                                                Bradley T. Hunsicker